UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FEDERAL TRADE COMMISSION,

STATE OF FLORIDA, and

STATE OF NEW YORK,

     Plaintiffs,

v.

THE TAX CLUB, INC., also doing business as
SUCCESS MERCHANT SERVICES,
CORPORATE TAX NETWORK, CORPORATE
CREDIT, and E-TAX HOTLINE 8882790191, a
Utah corporation,

MANHATTAN PROFESSIONAL GROUP, INC.,
also doing business as THE TAX CLUB,
BOOKEEPING SERVICES, BOOKKEEPING
SERVICES, IKONGO, ESSENTIAL PLANNING,
CORPORATE TAX NETWORK, BUSINESS
DOCUMENT CENTER, THE SUCCESS
PLANNING GROUP, ALL ACCESS BOOKS, and
VITAL PAYROLL, a New York corporation,

5410, INC., also doing business as INTERNET
MARKETING SUCCESS, THE SUCCESS
PLANNING GROUP, SUCCESS PLANNING
GROUP 2, SUCCESS ONLINE, BUSINESS
CREDIT, SUCCESS MERCHANT PROCESSING,
REAL ESTATE WIRE, DAY TRADE TEAM,
FUNDING FASTTRACK, CORPORATE CREDIT,
CORPORATE CREDIT 2, and PRESTIGE
FINANCING SERVICES, a Wyoming corporation,

MARBLE BASE, INC., also doing business as
BUSINESS RESOURCES, CORPORATE
SOLUTIONS, BUSINESS SUCCESS, BUSINESS
SERVICES, ONLINE DEVELOPMENT, and JADE
SEEK, a Wyoming corporation,

6015, LLC, also doing business as CYPRESS

Case No.   13 - cv - 210   (JMF)

**COMPLAINT FOR PERMANENT
INJUNCTION AND OTHER
EQUITABLE RELIEF**

CORP. SERVICES, MY TAX SERVICE, and
ACCOUNTING GROUP SERVICES, a Wyoming
limited liability company,

1800ACCOUNTANT, LLC, a Delaware limited
liability company,

IKONGO, INC., a Wyoming corporation,

TAHUYA, INC., a Washington corporation,

VISAVIS, INC., a Washington corporation,

HB MARKETING SERVICES, LLC, also doing
business as GLOBAL EDUCATION, WEBSITE
SERVICES, CELL PHONE COACHING,
MAVERICK MM, and EMAIL CASH, an Arizona
limited liability company,

PREMIER COACHING & CONSULTING, LLC,
also doing business as PREMIER COACHING,
WEBSITE SERVICES, AC SECRETS:
8774372521, AUTOMATIC PROFIT SYSTEM,
ADVANCED PROFITS, VIP PROFITS,
AUTOMATIC PROFIT SYSTEM VIP, and
AUTOMATIC PROFIT SYSTEM ADVANCED, an
Arizona limited liability company,

SKORPIOS HOLDINGS, INC., also known as
SKORPIOS HOLDING, INC., a Delaware
corporation,

EDWARD B. JOHNSON, also known as TED
JOHNSON, also known as TEDD JOHNSON,
individually and as a director, officer or owner of
THE TAX CLUB, INC., MANHATTAN
PROFESSIONAL GROUP, INC., 5410, INC., and
IKONGO, INC.,

MICHAEL M. SAVAGE, individually and as a
director, officer or owner of MANHATTAN
PROFESSIONAL GROUP, INC., 5410, INC.,
MARBLE BASE, INC., 6015, INC., IKONGO,

INC., 1800ACCOUNTANT, LLC, TAHUYA, INC.,
VISAVIS, INC., and SKORPIOS HOLDINGS,
INC.,

BRENDON A. PACK, individually and as an officer
or owner of MANHATTAN PROFESSIONAL
GROUP, INC., MARBLE BASE, INC., and
TAHUYA, INC.,

GARY J. MILKWICK, individually and as an
officer or owner of THE TAX CLUB, INC.,
MANHATTAN PROFESSIONAL GROUP, INC.,
5410, INC., 6015, LLC, 1800ACCOUNTANT,
LLC, HB MARKETING SERVICES, LLC,
PREMIER COACHING & CONSULTING, LLC,
and SKORPIOS HOLDINGS, INC.,

   Defendants, and

SANDRA C. SAVAGE,

   Relief Defendant.

Plaintiffs, the Federal Trade Commission ("FTC"), the State of Florida, and the State of

New York (collectively, "Plaintiffs"), for their Complaint allege:

  1.  The FTC brings this action under Sections 13(b) and 19 of the Federal Trade

Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and the Telemarketing and

Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, to

obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of

contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, appointment

of a receiver, and other equitable relief for Defendants' acts or practices in violation of Sections

5(a) of the FTC Act, 15 U.S.C. § 45(a) and the FTC's Trade Regulation Rule entitled Telemarketing Sales Rule ("TSR" or "Rule"), 16 C.F.R. Part 310.

2.    The State of Florida brings this action under the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA"), §§ 501.201 et seq., Fla. Stat., to obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, appointment of a receiver, and other equitable relief for Defendants' acts or practices in violation of FDUPTA. The State of Florida has conducted an investigation, and the head of the enforcing authority, Attorney General Pamela Jo Bondi, has determined that an enforcement action serves the public interest.

3.    The State of New York brings this action under New York Executive Law § 63(12) ("NY Exec. Law"), which authorizes the Attorney General of the State of New York to bring an action for injunctive relief, restitution, damages and costs against any person or business which has engaged in repeated or persistent fraud or illegality in the conduct of its business, and New York General Business Law ("GBL") §§ 349 and 350, which authorize the Attorney General to bring an action for injunctive relief, restitution and penalties whenever any person, firm, corporation or association or agent or employee thereof has engaged in deceptive business practices and false advertising. The Attorney General has determined that notice of this proposed action under GBL §§ 349(c) and 350-d is not in the public interest.

## JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a), 53(b), 57b, 6102(c) and 6105(b).

4

5.     This Court has supplemental jurisdiction over plaintiffs State of Florida's and State of New York's claims under 28 U.S.C. § 1367.

6.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c), and 15 U.S.C. § 53(b).

## **PLAINTIFFS**

7.     The FTC is an independent agency of the United States Government created by statute.  15 U.S.C. §§ 41-58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.  The FTC also enforces the Telemarketing Act.  Pursuant to the Telemarketing Act, the FTC promulgated and enforces the TSR, 16 C.F.R. Part 310, which prohibits deceptive and abusive telemarketing acts or practices.

8.     The FTC is authorized to initiate federal district court proceedings, in its own name and by its designated attorneys, to enjoin violations of the FTC Act and the Telemarketing Act and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, refund of monies paid, and disgorgement of ill-gotten monies. 15 U.S.C. §§ 53(b), 56(a)(2)(A)-(B), and 57b.

9.     The State of Florida is the enforcing authority under FDUPTA pursuant to Florida Statutes Section 501.203(2) and is authorized to pursue this action to enjoin violations of FDUTPA and to obtain legal, equitable or other appropriate relief including rescission or reformation of contracts, restitution, the appointment of a receiver, disgorgement of ill-gotten monies, or other relief as may be appropriate.  § 501.207, Fla. Stat.

10.    The State of New York, by its Attorney General, is authorized to take action to

5

enjoin repeated and persistent fraudulent and illegal business conduct under NY Exec. Law §
63(12) and deceptive business practices and false advertising under GBL §§ 349 and 350 and to
obtain legal, equitable or other appropriate relief including rescission or reformation of contracts,
restitution, the appointment of a receiver, disgorgement of ill-gotten monies, or other relief as may
be appropriate.

### DEFENDANTS

### The Corporate Defendants

11.     Defendant The Tax Club, Inc. ("TTC") is a Utah corporation with its principal place
of business at 350 Fifth Avenue, Suite 6015, New York, New York 10118, and a secondary
address at 1492 Silicon Way, Bldg. A, St. George, Utah 84770.  TTC also does business as Success
Merchant Services, Corporate Tax Network, Corporate Credit, and E-Tax Hotline 8882790191.
TTC transacts or has transacted business in this district and throughout the United States.

12.     Defendant Manhattan Professional Group, Inc. ("MPG") is a New York corporation
with its principal place of business at 350 Fifth Avenue, Suite 6015, New York, New York 10118.
MPG also does business as The Tax Club, Bookeeping Services, Bookkeeping Services, Ikongo,
Essential Planning, Corporate Tax Network, Business Document Center, The Success Planning
Group, All Access Books, and Vital Payroll.  MPG transacts or has transacted business in this
district and throughout the United States.

13.     Defendant 5410, Inc. is a Wyoming corporation with its principal place of business
at 350 Fifth Avenue, Suite 6015, New York, New York 10118, and a secondary address at 1492
Silicon Way, Bldg. A, St. George, UT 84770.  5410, Inc. also does business as Internet Marketing

6

Success, The Success Planning Group, Success Planning Group 2, Success Online, Business

Credit, Success Merchant Processing, Real Estate Wire, Day Trade Team, Funding FastTrack,

Corporate Credit, Corporate Credit 2, and Prestige Financing Services. 5410, Inc. transacts or has

transacted business in this district and throughout the United States.

14.     Defendant Marble Base, Inc. ("Marble Base") is a Wyoming corporation with its

principal place of business at 350 Fifth Avenue, Suite 6015, New York, New York 10118, and a

secondary address at an apartment building in Bellevue, Washington. Marble Base also does

business as Business Resources, Corporate Solutions, Business Services, Business Success, Online

Development, and Jade Seek. Marble Base transacts or has transacted business in this district and

throughout the United States.

15.     Defendant 6015, LLC is a Wyoming limited liability company with its principal

place of business at 350 Fifth Avenue, Suite 6015, New York, New York 10118. 6015, LLC also

does business as Cypress Corp. Services, My Tax Service, and Accounting Group Services. 6015,

LLC transacts or has transacted business in this district and throughout the United States.

16.     Defendant 1800Accountant, LLC ("1800Accountant") is a Delaware limited

liability company with its principal place of business at 350 Fifth Avenue, Suite 6015, New York,

New York 10118. 1800Accountant transacts or has transacted business in this district and

throughout the United States.

17.     Defendant Ikongo, Inc. ("Ikongo") is a former Wyoming corporation with its

principal place of business at 350 Fifth Avenue, Suite 6015, New York, New York 10118, and a

secondary address at 1492 W. Silicon Way, Suite C, St. George, Utah 84770. Though

administratively dissolved by the Wyoming Secretary of State on March 16, 2009 for failure to

maintain a registered agent, Ikongo has continued to operate as a *de facto* corporation by

7

maintaining bank accounts in furtherance of the conduct alleged herein. Ikongo transacts or has transacted business in this district and throughout the United States.

18.     Defendant Tahuya, Inc. ("Tahuya") is a Washington corporation with its principal place of business at 350 Fifth Avenue, Suite 6015, New York, New York 10118, and secondary addresses at an apartment building in Bellevue, Washington and at a home residence of defendant Brendon Pack in New York. Tahuya transacts or has transacted business in this district and throughout the United States.

19.     Defendant VisaVis, Inc. ("VisaVis") is a Washington corporation with its principal place of business at 350 Fifth Avenue, Suite 6015, New York, New York 10118, and a secondary address at the home residence of defendant Michael Savage in Connecticut. VisaVis transacts or has transacted business in this district and throughout the United States.

20.     Defendant HB Marketing Services, LLC ("HB Marketing Services") is an Arizona limited liability company with its principal place of business at 350 Fifth Avenue, Suite 6015, New York, New York 10118. HB Marketing Services also does business as Global Education, Website Services, Cell Phone Coaching, Maverick MM, and Email Cash. HB Marketing Services transacts or has transacted business in this district and throughout the United States.

21.     Defendant Premier Coaching & Consulting, LLC ("Premier Coaching") is an Arizona limited liability company with its principal place of business at 350 Fifth Avenue, Suite 6015, New York, New York 10118. Premier Coaching also does business as Premier Coaching, Website Services, AC Secrets: 8774372521, Automatic Profit System, Advanced profits, VIP Profits, Automatic Profit System VIP, and Automatic Profit System Advanced. Premier Coaching transacts or has transacted business in this district and throughout the United States.

22.     Defendant Skorpios Holdings, Inc., also known as Skorpios Holding, Inc.,

8

("Skorpios") is a Delaware corporation with its principal place of business at 350 Fifth Avenue, Suite 6015, New York, New York 10118. Skorpios transacts or has transacted business in this district and throughout the United States.

## The Individual Defendants

23.     Defendant Edward B. Johnson, also known as Ted Johnson, also known as Tedd Johnson, ("Johnson") is a resident of St. George, Utah and Rancho Santa Fe, California. He is the Chief Executive Officer and sole owner of TTC and MPG. He also is the Secretary of 5410, Inc. and a director and officer of Ikongo. By and through TTC, MPG, 5410, Inc., and Ikongo, Johnson has harmed U.S. consumers with his deceptive business practices. At all times material to this Complaint, acting alone or in concert with others, Johnson has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Johnson, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

24.     Defendant Michael M. Savage ("Savage") is a resident of New Canaan, Connecticut. He is the President of MPG. He also is the President, Chief Executive Officer, and an owner of 5410, Inc., Secretary of Marble Base, President of 6015, Inc., President of 1800Accountant, a director and President of Ikongo, President of Tahuya, President of VisaVis, and President of Skorpios. By and through MPG, 5410, Inc., Marble Base, 6015, Inc., 1800Accountant, Ikongo, Tahuya, VisaVis, and Skorpios, he has harmed U.S. consumers with his deceptive business practices. At all times material to this Complaint, acting alone or in concert with others, Savage has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Savage, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the

9

United States.

25.     Defendant Brendon A. Pack ("Pack"), is a resident of New York, New York and is the Sales Manager at MPG. He is also the President and an owner of Marble Base and Vice-President of Tahuya. By and through MPG, Marble Base and Tahuya, he has harmed U.S. consumers with his deceptive business practices. At all times material to this Complaint, acting alone or in concert with others, Pack has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Pack resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

26.     Defendant Gary J. Milkwick ("Milkwick") is a resident of Ridgewood, New Jersey. He is the President of TTC and the Vice-President of Operations at MPG. He is also the Treasurer of 5410, Inc., Vice-President and an owner of 6015, LLC, Vice-President and an owner of 1800Accountant, Vice President of Skorpios, and an officer of HB Marketing Services and Premier Coaching. By and through TTC, MPG, 5410, Inc., 6015, LLC, 1800Accountant, Skorpios, HB Marketing Services, and Premier Coaching, he has harmed U.S. consumers with his deceptive business practices. At all times material to this Complaint, acting alone or in concert with others, Milkwick has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Milkwick, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

## The Relief Defendant

27.     Relief defendant Sandra C. Savage is a resident of New Canaan, Connecticut. She is the spouse of defendant Michael Savage. Sandra Savage has received funds that can be traced directly to the Defendants' unlawful acts or practices alleged in this Complaint, and she has no

10

legitimate claim to those funds. For example, even though Sandra Savage is a stay-at-home mom, from April 2010 through June 2012, she received monthly electronic funds transfers from VisaVis totaling well in excess of $6 million. Her husband, defendant Michael Savage, is the President of VisaVis. Those transfers represent funds from consumer purchases deposited, directly and indirectly, with VisaVis and are ill-gotten proceeds of the Defendants' deceptive business practices described in this Complaint.

## COMMON ENTERPRISE

28.     TTC, MPG, 5410, Inc., Marble Base, 6015, LLC, 1800Accountant, Ikongo, Tahuya, VisaVis, HB Marketing Services, Premier Coaching, and Skorpios (the "Corporate Defendants" or "The Tax Club Enterprise") have operated and functioned as a common enterprise while engaging in the deceptive acts and practices and other violations of law alleged in this Complaint. They have conducted the business practices described below through an interrelated network of companies that have common ownership, control, officers, directors, members, managers, office locations, customer databases, and mailing addresses. The Corporate Defendants also co-mingle funds and rely on a shared method to identify potential customers, sell their products and services, bill customers, and handle customer service. Because these Corporate Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices described in this Complaint. Furthermore, Johnson, Savage, Pack, and Milkwick (the "Individual Defendants," and, together with the Corporate Defendants, the "Defendants") have formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Corporate Defendants that constitute the common enterprise.

11

## COMMERCE

29.     At all times material to this Complaint, the Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44, and Florida Statutes Section 501.203(8).

## DEFENDANTS' BUSINESS PRACTICES

### Introduction

30.     Since at least 2008, and continuing thereafter, the Defendants have used a variety of deceptive tactics outlined below to induce consumers to purchase products and services purportedly designed to foster small business development. The Defendants sell, among other things, tax preparation and advice, business planning and counseling, and business credit development services.

31.     The Defendants begin their marketing and sales efforts by purchasing so-called consumer leads. A "lead" is the contact information for a potential customer. The Defendants purchase their leads from entities that, like The Tax Club Enterprise, also market services to consumers interested in building a work-at-home, internet, or other small business.

32.     Using these leads, the Defendants engage in, or cause others to engage in, telemarketing through a plan, program, or campaign involving one or more telephones and more than one interstate call. The Defendants have taken in over $200 million from consumers across the country since 2008 alone.

12

33.     The Defendants typically begin their sales calls by falsely claiming that they are affiliated with companies that recently sold consumers a business development product or service. The Defendants typically tell consumers that they are calling on behalf of or at the direction of those other companies to discuss ways to improve the consumers' would-be businesses In fact, the Defendants are not affiliated with those other companies and are not calling on their behalf or at their direction. Rather, the Defendants merely purchased the consumers' names and contact information from those companies as leads. The Defendants then generate their own sales by promising that experienced professionals will provide an array of benefits and services including individualized business planning, tax counseling, and business credit development, and by claiming that their programs are essential to the success of the consumer's would-be business and will soon pay for themselves.

34.     After consumers make their initial purchase, Defendants continue to target them with repeated follow-up telemarketing calls designed to induce additional sales. During these uspell calls, Defendants continue to employ high-pressure sales tactics and continue to make false or misleading representations about the products and services they offer, again promising, among other things, expert advice, individualized business planning, tax counseling, and business credit development.

35.     Within days, weeks, or months of purchasing a product or service from the Defendants, consumers discover that what they bought is neither helpful nor necessary. The products and services provided by the Defendants give little or no substantive guidance or assistance. For example, the business planning documents the Defendants provide typically are boilerplate and non-specific to the individual consumer, the credit development plans are similarly general and therefore ineffective, and the expert counseling services are typically inaccessible.

13

36.     In numerous instances, consumers who purchase the Defendants' products and

services are not successful in establishing a business and do not earn any money. While some

consumers are able to start and operate a business in spite of the Defendants' empty promises, even

these consumers typically have earned no profit.

37.     Dissatisfied purchasers who request a refund often are unsuccessful because

Defendants adhere to a refund policy that requires consumers to cancel within a three-day window

for a full refund or within fifteen days for a partial refund. This refund policy is unworkable

because consumers typically do not have the opportunity to use or access the Defendants' programs

before the three or even fifteen-day windows expire. Consumers who try to cancel and obtain

refunds are typically subject to a cumbersome process where they are subject to high-pressure

pitches to continue the product or service and then transferred to another department for a so-called

"secondary review." As a result, many consumers who request a refund from the Defendants are

not given their money back.

### Overview of the Enterprise

38.     The Tax Club Enterprise began in 2003 when defendant Johnson formed TTC and

MPG. He is the CEO and sole owner of both companies and helped formulate policies governing

the enterprise's sales practices. For example, among other things, he created sample sale scripts to

guide sales representatives during telemarketing calls. In 2003, soon after forming TTC and MPG,

Johnson relocated the core enterprise to New York City from St. George, Utah, where only a small

sales and administrative office remained. The enterprise's operations, including its telemarketing

staff, are principally located in the Empire State Building in New York City.

39.     In 2003, Johnson also recruited Savage, his friend from college, as head accountant.

Savage soon became the President of MPG. At all times material to this Complaint, Savage was

14

The Tax Club Enterprise's senior-most official in New York and oversaw fulfillment, reporting, finance, customer service, client relations, and marketing operations.

40. Savage hired Milkwick, his friend from college, in 2007. Milkwick became the Vice-President of Operations for MPG and is now the President of TTC. He oversees fulfillment of The Tax Club Enterprise's products and services. He also designed The Tax Club Enterprise's fulfillment operational structure, which is based on geographic regions.

41. Pack joined The Tax Club Enterprise in 2004. He is the Sales Manager, and he oversees sales operations and manages the sales staff.

42. Since 2004, the Individual Defendants have set up numerous merchant accounts and commercial banking accounts in the names of the various Corporate Defendants. Each Individual Defendant signed account applications for, and has maintained control over, multiple accounts in the name of one or more Corporate Defendants on behalf of The Tax Club Enterprise.

43. A merchant account is a type of account that allows a business to process consumer purchases by credit or debit card. Merchant accounts are available through financial institutions called merchant acquiring banks. The Individual Defendants used several different intermediaries, known as "Independent Sales Organizations" or similar merchant service providers, including Applied Merchant Systems, Inc. and Newtek Merchant Solutions, to open more than 50 merchant accounts from multiple merchant acquiring banks, including HSBC Bank, Wells Fargo Bank, and BancorpSouth Bank. Using these merchant accounts, The Tax Club Enterprise is able to process credit and debit card payments from consumers.

44. For example, Defendants Johnson and Savage formed 5410, Inc. in 2008. 5410, Inc. opened and maintains merchant accounts on behalf of The Tax Club Enterprise, enabling the enterprise to conduct business by receiving payments by credit and debit card.

15

45.     Defendant Pack formed Marble Base in 2010. Marble Base opened and maintains merchant accounts on behalf of The Tax Club Enterprise, enabling the enterprise to conduct business by receiving payments by credit and debit card.

46.     Defendant Milkwick formed 6015, LLC in February 2012. 6015, LLC opened and maintains merchant accounts on behalf of The Tax Club Enterprise, enabling the enterprise to conduct business by receiving payments by credit and debit card.

47.     HB Marketing was formed in February 2007. It opened and maintains merchant accounts on behalf of The Tax Club Enterprise, enabling the enterprise to conduct business by receiving payments by credit and debit card.

48.     Premier Coaching was formed in September 2007. It opened and maintains merchant accounts on behalf of The Tax Club Enterprise, enabling the enterprise to conduct business by receiving payments by credit and debit card.

49.     1800Accountant was formed in February 2012. It opened and maintains a merchant account on behalf of The Tax Club Enterprise, enabling the enterprise to conduct business by receiving payments by credit and debit card.

50.     Using so many different merchant accounts has enabled The Tax Club Enterprise to continue to process consumers' credit and debit card purchases even though several merchant accounts were terminated by Discover Financial Services, Inc. and Bank of America Merchant Services for incurring a high level of disputed charges, or "chargebacks," as a result of the deceptive practices outlined in this Complaint.

51.     The Individual Defendants have also opened multiple commercial bank accounts in the names of each of the Corporate Defendants to deposit, redistribute, and withdraw funds from the credit and debit card sales transactions generated by The Tax Club Enterprise. The deposited

16

funds are repeatedly transferred among the various accounts. Since 2008 alone, the Individual Defendants have extracted millions of dollars from The Tax Club Enterprise using these company accounts.

52.     For example, Savage and Milkwick opened a business checking account at Bank of America in February 2012 in the name of corporate defendant Skorpios. From February 2012 through June 2012, over one million dollars was transferred into the Skorpios bank account from company accounts belonging to TTC, MPG, 5410, Inc., and VisaVis. These funds were then transferred out of the Skorpios account and into bank accounts belonging to 1800Accountant and VisaVis and to personal bank accounts belonging to Johnson, Savage, and Milkwick, among others.

53.     Savage opened four accounts at Bank of America in 2008 in the name of corporate defendant VisaVis. From April 2008 through June 2012, over $12 million was transferred into these VisaVis bank accounts from company accounts belonging to TTC, MPG, Marble Base, 5410, Inc., and Ikongo. These funds were then transferred out of the VisaVis accounts and into bank accounts belonging to corporate defendant Skorpios, to individual defendants Johnson, Savage, and Milkwick, and to relief defendant Sandra Savage, among others.

54.     Similarly, in March 2008, Savage and Pack opened three accounts at Bank of America in the name of corporate defendant Tahuya. From June 2009 through October 2010, over $6 million in funds from consumer purchases was deposited directly into these Tahuya accounts. Those funds were then transferred out of the Tahuya accounts and into bank accounts belonging to 5410, Inc., Marble Base, and VisaVis and to personal bank accounts belonging to Savage and Pack, among others.

55.     Bank accounts in the names of the other Corporate Defendants have been used in

17

similar fashion.

## Products and Services

56.     The Defendants purport to offer various small business development products and services including tax return preparation, tax advice and online tax resources, payroll and accounting services, business entity formation, business planning and counseling, credit coaching and development, and logo and website design. The Defendants bundle these same basic products and services into well over 100 different programs marketed under various brand names, including: The Tax Club, All Access Books, My Essential Plans, Success Planning Group, and Small Business Credit.

57.     TTC owns the product and service brands related to tax and entity formation, and MPG owns other brands offered by the enterprise.

58.     Through the "The Tax Club" brand, the Defendants purport to offer a variety of programs including, but not limited to the following: Corporation Document Package, Business Starter Package, Business Saver Package, Business Saver Plus Package, Incorporation Package A, Incorporation Package B, Incorporation Package C, Incorporation Package H, Incorporation Package I, Incorporation Package J, E-Tax Hotline, Corporation & Kit, Corporate Records Pro, Unlimited Tax Consulting, Tax Plan, Resident Agent Service, Startup Guide, Money Management Guide, Business Financial Analysis, Z Package, Z Package Plus, Sole Proprietorship Package A, Sole Proprietorship Package B, TTC Finance Package A, TTC Finance Package B, and TTC Finance Package C.

59.     Through the "My Essential Plans" and "Small Business Credit" brands, the Defendants purport to offer a variety of programs including, but not limited to the following: (MEP) Bronze, (MEP) Silver, (MEP) Gold, (MEP) Platinum, MEP Foreign Business Plan, MEP + SBC

Silver, MEP + SBC Gold, Small Biz Credit Silver, Small Biz Credit Gold, Small Biz Credit Platinum, New-SBC One-On-One Coaching, and New-SBC One-On-One Coaching + Business Plan.

60.     Through the "Success Planning Group" brand, the Defendants purport to offer a variety of programs including, but not limited to the following: Wealth Advisor Silver, Wealth Advisor Gold, Wealth Advisor Platinum, VOX Silver, VOX Gold, VOX Platinum, VOX Executive, Production 4 Profit Silver, Production 4 Profit Gold, Production 4 Profit Platinum, Property Wire Premium, Property Wire Executive, Focus on the Business Basic, Focus on the Business Plus, Focus on the Business Premium, Focus on the Business Executive, Biz Suite Basic, Biz Suite Silver, Biz Suite Pro, Biz Suite Platinum, Biz Tweet Bronze, Biz Tweet Silver, Biz Tweet Gold, and Biz Tweet Platinum.

61.     Through the "All Access Books" brand, the Defendants purport to offer a variety of programs including, but not limited to, the following: Full Service Basic A, Full Service Bronze A, Full Service Silver A, Full Service Gold A, Full Service Basic B, Full Service Bronze B, Full Service Silver B, Full Service Gold B, CORP + All Access Bronze, All-Access Bronze, All-Access Silver, All Access Gold, Full Service Basic, Full Service Bronze, Full Service Silver, and Full Service Gold.

62.     The Defendants purport to offer a variety of additional programs including, but not limited to, the following: Bronze eBiz, Silver eBiz, Gold eBiz, Platinum eBiz, Executive eBiz, Making Real Money on the Internet and Super Cash System, Bronze Logo Package, Silver Logo Package, Gold Logo Package, New Ikongo Platinum Logo, Link Power Bronze, Link Power Gold, List Builder Gold, Drop Ship University Basic, Drop Ship University Executive/Pro, Merchant V-Card Bronze, Merchant V-Card Silver, Merchant V-Card Gold, CTN Incorporation Package A,

19

CTN Incorporation Package B, CTN Incorporation Package C, CTN E-Tax Hotline, CTN Tax Plan, CTN Unlimited Tax Consulting, CTN Full Service Basic, CTN Full Service Bronze, CTN Full Service Silver, CTN Full Service Gold, CTN Business Plan Bronze, CTN Business Plan Silver, CTN Business Plan Gold, CTN Business Plan Platinum, CTN Corporate Credit Silver, and CTN Corporate Credit Platinum.

63.    The Defendants have sold these various products and services to tens of thousands of consumers. For example, TTC and MPG, the principal operating entities within The Tax Club Enterprise, acquired over 11,000 new customers annually both in 2010 and in 2009 and over 13,000 new customers in 2008. The Defendants' sales are ongoing.

64.    The Defendants substantially prioritize sales over service. For example, despite their promises of specialized expertise and individualized service, as of May 2010, TTC and MPG employed approximately 225 people, but fewer than 25% of them were charged with product and service fulfillment. Sales representatives and administrative staff comprised over 75% of TTC and MPG's staff. Moreover, as of August 2011, only six employees were Certified Public Accountants, and only 11 were Enrolled Agents (an Enrolled Agent is a tax practitioner authorized to represent taxpayers before the Internal Revenue Service).

## Consumer Leads and Sales Calls

65.    The Defendants rely on "leads" (the contact information of potential customers) supplied by other businesses for a fee in order to market their products and services. Those other businesses, known as "lead sources," include companies offering work-at-home programs or other business development services that have been the subject of numerous consumer complaints, law enforcement actions, or both. Those lead sources include: Professional Marketing International; Stores Online, Inc. (formerly doing business as Galaxy Malls, Inc.); Ivy Capital, Inc.; NSA

20

Technologies, Inc.; and Achieve Technologies, LLC.

66.     Many of the Defendants' lead sources are also in the business of selling purported

business development programs and related services, and they already have an existing or prior

business relationship with the consumers supplied to the Defendants as leads.

67.     The Defendants typically pay their lead sources a percentage of the ensuing sales

generated from each lead.

68.     The Defendants' sales representatives contact the consumers identified as leads by

telephone for the purpose of selling the Defendants' products and services.

69.     During these sales calls, which typically last an hour or more, the Defendants' sales

representatives do not promptly disclose that the purpose of the call is to sell a product or service,

and they make a number of misrepresentations as outlined below, often using high-pressure sales

tactics, to generate sales.

## False Affiliation Claims

70.     The Defendants typically begin their sales calls by claiming that they are calling

consumers on behalf of or at the direction of a particular lead source to discuss ways to improve

the consumers' would-be businesses. Consumers receiving these calls recently purchased a

business development product or service from that lead source and are therefore misled to believe

that the Defendants are connected to that product or service.

71.     The Defendants further claim that, in order for consumers to recoup the money they

invested in the product or service they purchased from the lead source, consumers need to purchase

additional products and services from the Defendants. In this way, the Defendants pressure

consumers into purchasing their own products and services out of fear that the money they already

paid to the lead source will otherwise be lost.

21

72.     These affiliation claims are false because the Defendants are not calling consumers

on behalf or at the direction of the lead source, which merely sold the Defendants the particular

lead. Also, in numerous instances, the Defendants' products and services do not enable consumers

to recoup the money they invested in the product or service they purchased from the lead source.

### Misrepresentations About Recouping Purchase Price and Earnings

73.     The Defendants typically charge consumers several thousand dollars for each of

their various products and services. The cost usually involves a large initial fee followed by

smaller monthly payments. The exact price typically depends on the amount of savings and credit

consumers have available. The Defendants' sales representatives probe consumers' financial

circumstances during sales calls in order to maximize purchases and price.

74.     The Defendants tell consumers to use the credit available on their credit cards in

order to pay for, or invest in, their products and services. In instances where consumers do not

have sufficient available credit or savings, the Defendants' sales representatives convince

consumers to finance the charges.

75.     In numerous instances, representatives encourage consumers to purchase the

Defendants' programs by claiming that consumers ultimately will not have to pay the charges out

of their own pocket.

76.     In numerous instances, representatives claim that consumers who purchase the

Defendants' products and services: (a) will earn enough money from their future businesses to

recoup the purchase price; (b) will be able to recoup the purchase price through deductions on their

tax returns; or (c) can transfer those costs to their future businesses.

77.     The Defendants' claims about transferring and recouping the purchase price are

false because, in numerous instances, consumers who purchase the Defendants' products and

services are not able to recoup the purchase price from future business income, are not able to recoup the purchase price through tax deductions, and are not able to transfer the purchase price to future businesses. In fact, in numerous instances, consumers who purchase the Defendants' products and services are never able to establish an operating business.

78.     In numerous instances, representatives also claim that consumers who purchase the Defendants' products and services will earn thousands of dollars per month from their future businesses.

79.     These earnings claims are false because, in numerous instances, consumers who purchase the Defendants' products and services do not make thousands of dollars per month from future businesses.

**Misrepresentations About the Scope and Nature of Services Provided**

80.     In numerous instances, Defendants mislead consumers about the scope of the programs they offer for sale. The Defendants' products and services typically are bundled together and sold as programs. Different programs include different products and services. Sales representatives discuss various products and services that the Defendants offer without specifying which are, and which are not, included in any particular program. Therefore, in numerous instances, consumers who purchase a particular program are misled to believe that they will receive more products and services than are actually included in the program they buy.

81.     In addition, the Defendants do not fulfill the products and services they sell as promised. For example, in numerous instances, representatives falsely claim that: (a) consumers will have unlimited access to tax advisors, business advisors, or both who will provide specialized expert advice tailored to the consumers' specific needs; (b) consumers will receive individualized business plans tailored to their particular business; or (c) consumers will receive specialized

23

assistance necessary to develop and obtain business credit.

82.     In numerous instances, purchasers are unable to access a live tax or business advisor, or even reach a single, consistent point of contact. Instead, when purchasers call The Tax Club Enterprise seeking assistance, in numerous instances, they end up caught in a seemingly endless web of transfers from one representative to the next.

83.     In numerous instances, purchasers do not receive individualized business plans tailored to their particular businesses but, rather, only boilerplate, prefabricated plans.

84.     In numerous instances, purchasers receive only generic business credit information and are unable to obtain business credit.

## The Related Upsells

85.     Following an initial sale, the Defendants continue to market additional products and services to their customers by telephone.

86.     Typically, these upsell calls are masked as fulfillment calls that were scheduled for the ostensible purpose of providing services that the customer already purchased. In fact, Defendants attempt to sell consumers additional products and services during these supposed fulfillment calls. Defendants do not disclose promptly that the purpose of the call is in fact to sell additional products and services.

87.     During upsell calls, the Defendants leverage consumers' initial financial commitment to induce additional sales. In numerous instances, representatives claim that consumers must supplement the products and services they already purchased from the Defendants with additional products and services in order to recoup the money they already paid. Consumers are thus pressured into making additional purchases out of fear that the money they already paid

24

will otherwise be lost.

88.     These supplementation claims are false because, in numerous instances, consumers who purchase additional products and services from the Defendants do not establish profitable businesses and are not able to recoup the money they had already paid.

89.     It is during these upsell calls that consumers often first realize that products and services they believed they had already purchased in actuality were not included in the programs they previously bought from the Defendants.

90.     In numerous instances, the Defendants' sales representatives also make the same kinds of additional misrepresentations during upsell calls as they do during initial sales calls. Those additional misrepresentations include the following false claims: (a) consumers will have unlimited access to tax advisors, business advisors, or both who will provide specialized expert advice tailored to the consumers' specific needs; (b) consumers will receive individualized business plans tailored to their particular business; or (c) consumers will receive specialized assistance necessary to develop and obtain business credit.

## VIOLATIONS OF THE FTC ACT

91.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

92.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

93.     As set forth below, Defendants have engaged and continue to engage in violations of Section 5(a) of the FTC Act in connection with the marketing and sale of their business development products and services.

## COUNT ONE – MISREPRESENTATION (RECOUPING PURCHASE PRICE AND EARNINGS)

### (By Plaintiff Federal Trade Commission)

94.     In numerous instances in connection with the telemarketing and sale of their products and services, Defendants have represented, directly or indirectly, expressly or by implication, that consumers who purchase Defendants' business development products and services:

> a.      will recoup the cost of Defendants' products and services through business earnings or tax deductions;
>
> b.      will be able to transfer the cost of Defendants' products and services to their future businesses; or
>
> c.      are likely to earn substantial income.

95.     In truth and in fact, in numerous instances in which the Defendants have made the representations set forth in Paragraph 94 above, consumers who purchased the Defendants' products and services:

> a.      did not recoup those costs through business earnings or tax deductions;
>
> b.      could not transfer those costs to their future businesses; and
>
> c.      did not earn substantial income.

96.     Therefore, Defendants' representations as set forth in Paragraph 94 of this

26

Complaint are false and misleading, and constitute a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT TWO – MISREPRESENTATION (PRODUCTS AND SERVICES PROVIDED)

### (By Plaintiff Federal Trade Commission)

97.     In numerous instances in connection with the telemarketing and sale of their products and services, Defendants have represented, directly or indirectly, expressly or by implication, that they will provide various products and services to their customers, including but not limited to one or more of the following:

> (a) unlimited access to tax or business advisors who will provide specialized expert advice tailored to the consumers' specific needs;
>
> (b) individualized business plans tailored to the consumer's particular business; and
>
> (c) specialized assistance necessary to develop and obtain business credit.

98.     In truth and in fact, in numerous instances in which the Defendants have made the representations set forth in Paragraph 97 above, Defendants did not provide the products and services they represented they would provide, including but not limited to: (a) unlimited access to tax or business advisors who will provide specialized expert advice tailored to the consumers' specific needs; (b) individualized business plans tailored to the consumer's particular business; and (c) specialized assistance necessary to develop and obtain business credit.

99.     Therefore, Defendants' representations as set forth in Paragraph 97 of this Complaint are false and misleading, and constitute a deceptive act or practice in violation of

27

Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT THREE – MISREPRESENTATIONS (AFFILIATION)

### (By Plaintiff Federal Trade Commission)

100. In numerous instances in connection with the telemarketing and sale of their products and services, Defendants have represented, directly or indirectly, expressly or by implication, one or both of the following:

> a. the Defendants are calling consumers on behalf of or at the direction of companies that recently sold consumers a business development product or service; and

> b. consumers will recoup the money they already paid to other companies for business development products and services if they purchase additional products and services from the Defendants.

101. In truth and in fact, in numerous instances in which the Defendants have made the representations set forth in Paragraph 100 above, the Defendants were not calling consumers on behalf or at the direction of companies that recently sold consumers a business development product or service, and consumers did not recoup the money they already paid to other companies for business development products and services after they purchased additional products and services from the Defendants.

102. Therefore, Defendants' representations as set forth in Paragraph 100 of this

Complaint are false and misleading, and constitute a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATIONS OF THE TELEMARKETING SALES RULE

103.    Congress directed the FTC to prescribe rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C. §§ 6101 – 6108, which resulted in the adoption of the TSR, 16 C.F.R. Part 310.

104.    Defendants are "sellers[s]" and "telemarketer[s]" engaged in "telemarketing" as defined by the TSR, 16 C.F.R. §§ 310.2(aa), (cc), and (dd).

105.    The TSR prohibits sellers and telemarketers from misrepresenting, directly or by implication, any material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer.  16 C.F.R. § 310.3(a)(2)(iii).

106.    The TSR requires telemarketers to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call: (1) the identity of the seller; (2) that the purpose of the call is to sell goods or services; and (3) the nature of the goods and services.  16 C.F.R. §§ 310.4(d)(1), (2), and (3).

107.    Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).  Pursuant to Section 4(a) of the Telemarketing Act, 15 U.S.C. § 6103(a), the Attorneys General of the State of Florida and the State of New York are authorized to bring civil actions to enforce the TSR, and violations of the TSR constitute violations of FDUPTA,

§§ 501.201 et seq. Fla. Stat., and of NY Exec. Law § 63(12) and GBL §§ 349 and 350.

## COUNT FOUR – MISREPRESENTATION (PERFORMANCE, EFFICACY, NATURE, ESSENTIAL CHARACTERISTICS)

### (By Plaintiffs Federal Trade Commission, State of Florida, and State of New York)

108.    In numerous instances in connection with the telemarketing offers to sell the Defendants' products and services, Defendants, directly or indirectly, expressly or by implication, have made representations regarding material aspects of the performance, efficacy, nature, or essential characteristics of their products and services, such as:

    a.    consumers who purchase the Defendants' products and services will recoup the purchase costs through business earnings or tax deductions;

    b.    consumers who purchase the Defendants' products and services will be able to transfer the purchase costs to their future businesses;

    c.    consumers who purchase the Defendants' products and services are likely to earn substantial income;

    d.    the Defendants will provide products and services to their customers including but not limited to one or more of the following:

        (i) unlimited access to tax or business advisors who will provide specialized expert advice tailored to the consumers' specific needs;

        (ii) individualized business plans tailored to the consumer's particular business; and

        (iii) specialized assistance necessary to develop and obtain business credit.

109.    In truth and in fact, in numerous instances in which the Defendants have made the

representations set forth in Paragraph 108 above:

  a.    consumers who purchased the Defendants' products and services did not recoup the purchase price through business earnings or tax deductions;

  b.    consumers who purchased the Defendants' products and services were not able to transfer those costs to their future businesses;

  c.    consumers who purchased the Defendants' products and services did not earn substantial income;

  d.    the Defendants did not provide products and services that they represented they would provide, including but not limited to:

     (i) unlimited access to tax or business advisors who will provide specialized expert advice tailored to the consumers' specific needs;

     (ii) individualized business plans tailored to the consumer's particular business; and

     (iii) specialized assistance necessary to develop and obtain business credit.

   110.   The Defendants' practices as alleged in Paragraph 108 therefore constitute deceptive telemarketing acts or practices that violate Section 310.3(a)(2)(iii) of the TSR, 16 C.F.R. § 310.3(a)(2)(iii).

## COUNT FIVE – FAILURE TO DISCLOSE (SELLER'S IDENTITY, SALES PURPOSE OF CALL, AND NATURE OF SERVICES)

### (By Plaintiffs Federal Trade Commission, State of Florida, and State of New York)

   111.   In numerous instances in connection with the telemarketing offers to sell the Defendants' products and services, Defendants, directly or indirectly, have failed to disclose

promptly and in a clear and conspicuous manner to the person receiving the call:

        a.     the identity of the seller;

        b.     that the purpose of the call is to sell services; and

        c.     the nature of those services.

112.    The Defendants' practice as alleged in Paragraph 111 is an abusive telemarketing practice that violates Sections 310.4(d)(1), (2) and (3) of the TSR, 16 C.F.R. §§ 310.4(d)(1), (2), and (3).

## COUNT SIX – FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

### (By Plaintiff State of Florida)

113.    As set forth in Paragraphs 1 through 90 above, which allegations are incorporated as if set forth herein, the Corporate Defendants have committed acts and practices that are unfair, deceptive and/or unconscionable in violation of FDUTPA, including:

> a.    Misrepresenting the affiliation of The Tax Club Enterprise, expressly or by implication, by representing that (i) The Tax Club Enterprise representatives are calling consumers on behalf of or at the direction of a particular lead source, and (ii) The Tax Club Enterprise's programs are integral to implementing the business development services the consumer already purchased from the lead source;

> b.    Misrepresenting, directly or by implication, that consumers must supplement the products and services they already purchased from The Tax Club Enterprise with additional products and services from The Tax Club Enterprise in order to establish a profitable business;

32

c.     Misrepresenting the purchase price of the products or services sold by The

Tax Club Enterprise through representing, directly or by implication, that: (i)

consumers who purchase The Tax Club Enterprise's products and services can

transfer those costs to their future businesses; (ii) consumers will earn enough

money from their future business to recoup the purchase price; and (iii) consumers

will be able to recoup the purchase price through deductions on their tax returns;

d.     Misrepresenting, directly or by implication, that purchasers of The Tax Club

Enterprise's products and services will earn substantial income;

e.     Misrepresenting that consumers will not be able to establish a profitable

business without the purchase of The Tax Club Enterprise's products and services.

or, in many cases, more products and services from The Tax Club Enterprise, and

that such purchases will establish a profitable business;

f.     Misrepresenting, directly or by implication, that The Tax Club Enterprise

will provide various products and services to consumers, including but not limited

to business entity formation, business credit development, individualized business

planning, tax return preparation, tax advice, and personal consultation and business

counseling; despite such representations, The Tax Club Enterprise does not provide

the products and services as promised.

114.     In addition, the Corporate Defendants have committed acts and practices that are

violations of the Telemarketing Act, 15 U.S.C. §§ 6101 – 6108, by virtue of the TSR, 16 C.F.R.

Part 310, as set forth herein in Paragraphs 108 through 112, the violation of which is likewise a

violation of FDUTPA.

115.     The Individual Defendants are personally liable for the unlawful acts and practices

33

of the Corporate Defendants as each of the Individual Defendants, namely Johnson, Savage, Pack, and Milkwick, have the authority and power to control or direct the conduct at issue herein of the Corporate Defendants and/or actually participated in and directed the conduct at issue herein of the Corporate Defendants.

116.   The acts and practices of The Tax Club Enterprise as set forth herein were misleading, deceptive and unconscionable and likely to mislead a consumer acting reasonably, and consumers within the State of Florida and elsewhere were actually misled by the acts and practices of The Tax Club Enterprise recited herein.

## COUNT SEVEN – NEW YORK EXECUTIVE LAW
## SECTION 63(12)

### (By Plaintiff State of New York)

117.   As set forth in Paragraphs 1 through 90 above, which allegations are incorporated as if set forth herein, the Corporate and Individual Defendants have committed acts and practices that constitute repeated and persistent fraudulent and illegal conduct in violation of NY Exec. Law § 63(12), including:

> a.   Misrepresenting the affiliation of The Tax Club Enterprise, expressly or by implication, by representing that (i) The Tax Club Enterprise representatives are calling consumers on behalf of or at the direction of a particular lead source, and (ii) The Tax Club Enterprise's programs are integral to implementing the business development services the consumer already purchased from the lead source;
>
> b.   Misrepresenting, directly or by implication, that consumers must supplement the products and services they already purchased from The Tax Club Enterprise

34

with additional products and services from The Tax Club Enterprise in order to establish a profitable business;

c.    Misrepresenting the purchase price of the products or services sold by The Tax Club Enterprise through representing, directly or by implication, that: (i) consumers who purchase The Tax Club Enterprise's products and services can transfer those costs to their future businesses; (ii) consumers will earn enough money from their future business to recoup the purchase price; and (iii) consumers will be able to recoup the purchase price through deductions on their tax returns;

d.    Misrepresenting, directly or by implication, that purchasers of The Tax Club Enterprise's products and services will earn substantial income;

e.    Misrepresenting that consumers will not be able to establish a profitable business without the purchase of The Tax Club Enterprise's products and services, or, in many cases, more products and services from The Tax Club Enterprise, and that such purchases will establish a profitable business;

f.    Misrepresenting, directly or by implication, that The Tax Club Enterprise will provide various products and services to consumers, including but not limited to business entity formation, business credit development, individualized business planning, tax return preparation, tax advice, and personal consultation and business counseling; despite such representations, The Tax Club Enterprise does not provide the products and services as promised;

g.    Committing acts and practices that are a violation of the Telemarketing Act, 14 U.S.C. §§ 6101 – 6108, by virtue of the TSR, 16 C.F.R. Part 310, as set forth herein in Paragraphs 108 through 112, the violation of which is likewise a violation

35

of NY Exec. Law § 63(12).

## COUNT EIGHT – NEW YORK GENERAL BUSINESS LAW
## ARTICLE 22-A

### (By Plaintiff State of New York)

118.    As set forth in Paragraphs 1 through 90 above, which allegations are incorporated as if set forth herein, the Corporate and Individual Defendants have committed acts and practices that are deceptive business practices and false advertising in violation of GBL §§ 349 and 350, including:

    a.    Misrepresenting the affiliation of The Tax Club Enterprise, expressly or by implication, by representing that (i) The Tax Club Enterprise representatives are calling consumers on behalf of or at the direction of a particular lead source, and (ii) The Tax Club Enterprise's programs are integral to implementing the business development services the consumer already purchased from the lead source;

    b.    Misrepresenting, directly or by implication, that consumers must supplement the products and services they already purchased from The Tax Club Enterprise with additional products and services from The Tax Club Enterprise in order to establish a profitable business;

    c.    Misrepresenting the purchase price of the products or services sold by The Tax Club Enterprise through representing, directly or by implication, that: (i) consumers who purchase The Tax Club Enterprise's products and services can transfer those costs to their future businesses: (ii) consumers will earn enough money from their future business to recoup the purchase price; and (iii) consumers

36

will be able to recoup the purchase price through deductions on their tax returns;

d.    Misrepresenting, directly or by implication, that purchasers of The Tax Club Enterprise's products and services will earn substantial income;

e.    Misrepresenting that consumers will not be able to establish a profitable business without the purchase of The Tax Club Enterprise's products and services, or, in many cases, more products and services from The Tax Club Enterprise, and that such purchases will establish a profitable business;

f.    Misrepresenting, directly or by implication, that The Tax Club Enterprise will provide various products and services to consumers, including but not limited to business entity formation, business credit development, individualized business planning, tax return preparation, tax advice, and personal consultation and business counseling; despite such representations, The Tax Club Enterprise does not provide the products and services as promised;

g.    Committing acts and practices that are a violation of the Telemarketing Act, 14 U.S.C. §§ 6101 – 6108, by virtue of the TSR, 16 C.F.R. Part 310, as set forth herein in Paragraphs 108 through 112, the violation of which is likewise a violation of GBL §§ 349 and 350.

## RELIEF DEFENDANT

## COUNT NINE – ILL-GOTTEN GAINS

**(By Plaintiffs Federal Trade Commission, State of Florida, and State of New York)**

119.    Relief defendant Sandra Savage has received, directly or indirectly, funds and assets from the Defendants that are traceable to funds obtained from Defendants' customers through the

unlawful acts or practices described herein.

120.    Relief defendant Sandra Savage has no legitimate claim to the ill-gotten funds or
benefits she received and will be unjustly enriched if she is not required to disgorge the funds or
the value of benefits she received as a result of the Defendants' unlawful acts or practices.

121.    By reason of the foregoing, relief defendant Sandra Savage holds funds or assets in
constructive trust for the benefit of Defendants' customers.

## CONSUMER INJURY

122.    Consumers have suffered and will continue to suffer substantial injury as a result of
the Defendants' violations of the FTC Act, the Telemarketing Act, the TSR, FDUPTA, the NY
Exec. Law, and the GBL. In addition, Defendants have been unjustly enriched as a result of their
unlawful acts or practices. Absent injunctive relief by this Court, Defendants are likely to continue
to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

123.    Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant
injunctive and such other relief as the Court may deem appropriate to halt and redress violations of
any provision of law enforced by the FTC. The Court, in the exercise of its equitable jurisdiction,
may award ancillary relief, including rescission or reformation of contracts, restitution, the refund
of monies paid, the disgorgement of ill-gotten monies, and prejudgment interest to prevent and
remedy any violation of any provision of law enforced by the FTC.

124.    Section 19 of the FTC Act, 15 U.S.C. § 57b, Section 6(b) of the Telemarketing Act,
15 U.S.C. § 6105(b), authorizes this Court to grant such relief as the Court finds necessary to

38

redress injury to consumers resulting from Defendants' violations of the TSR, including the rescission or reformation of contracts, restitution, the refund of monies paid, the disgorgement of ill-gotten monies, and prejudgment interest.

125.    Florida Statutes Section 501.207 authorizes this Court to issue appropriate orders granting legal, equitable or other appropriate relief for Defendants' violations of FDUPTA and the TSR.

126.    NY Exec. Law § 63(12) and GBL §§ 349 and 350 authorize this Court to issue appropriate orders granting legal, equitable or other appropriate relief for Defendants' violations of NY Exec. Law § 63(12), GBL §§ 349 and 350, and the TSR.

## PRAYER FOR RELIEF

Wherefore, plaintiff FTC, pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, and Section 6(d) of the Telemarketing Act, 15 U.S.C. § 6105(b), plaintiff State of Florida, pursuant to Florida Statutes Section 501.207, and plaintiff State of New York, pursuant to NY Exec. Law § 63(12) and GBL §§ 349 and 350, and as authorized by the Court's own equitable powers, request that the Court:

A.    Award Plaintiffs such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including but not limited to, a temporary restraining order, a preliminary injunction, an order freezing assets, immediate access, and appointment of a receiver;

B.    Enter a permanent injunction to prevent future violations of the FTC Act, the Telemarketing Act, the TSR, FDUPTA, the NY Exec. Law, and the GBL by Defendants;

39

C.    Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act, the Telemarketing Act, the TSR, FDUPTA, the NY Exec. Law, and the GBL, including but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, the disgorgement of ill-gotten monies, and prejudgment interest;

D.    Award civil penalties in an amount up to $10,000 per transaction pursuant to Florida Statutes Section 501.2075 and up to $15,000 per transaction pursuant to Florida Statutes Section 501.2077 for the willful acts and practices of the Defendants in violation of FDUPTA;

E.    Award civil penalties in an amount up to $5,000 for each violation of GBL §§ 349 and 350, pursuant to GBL § 350-d; and

F.    Award Plaintiffs attorneys' fees and the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Respectfully submitted,

DAVID C. SHONKA
Acting General Counsel

WILLIAM H. EFRON
Regional Director
Northeast Region

Dated:  January 8, 2013

Darren H. Lubetzky
Ann F. Weintraub
Savvas S. Diacosavvas
Federal Trade Commission
Northeast Region
One Bowling Green, Suite 318
New York, NY 10004
Tel: (212) 607-2829
Fax: (212) 607-2822
Email: dlubetzky@ftc.gov
Email: aweintraub@ftc.gov

40

Email: sdiacosavvas@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

PAMELA JO BONDI
ATTORNEY GENERAL,

Dated:  1/8/13

Robert G. Clements
Office of the Attorney General
135 W. Central Blvd., Suite 1000
Orlando, Florida 32801
Telephone: (407) 234-0833
Facsimile: (407) 245-0365
Email: Robert.Clements@myfloridalegal.com

Attorney for Plaintiff
STATE OF FLORIDA


ERIC T. SCHNEIDERMAN
ATTORNEY GENERAL,

Dated:

Judy S. Prosper
Guy H. Mitchell
Jane M. Azia
Office of the Attorney General
Westchester Regional Office
101 East Post Road
White Plains, New York 10601
Telephone: (914) 422-8755
Facsimile: (914) 422-8706
Email: Judy.Prosper@ag.ny.gov
Email: Guy.Mitchell@ag.ny.gov
Email: Jane.Azia@ag.ny.gov

Attorney for Plaintiff
STATE OF NEW YORK

Email: sdiacosavvas@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

PAMELA JO BONDI,
ATTORNEY GENERAL,

Dated:                           _____

Robert G. Clements
Office of the Attorney General
135 W. Central Blvd., Suite 1000
Orlando, Florida 32801
Telephone: (407) 234-0833
Facsimile: (407) 245-0365
Email: Robert.Clements@myfloridalegal.com

Attorney for Plaintiff
STATE OF FLORIDA

ERIC T. SCHNEIDERMAN
ATTORNEY GENERAL,

Dated: JAnuary 8, 2013       _____

Judy S. Prosper
Guy H. Mitchell
Jane M. Azia
Office of the Attorney General
Westchester Regional Office
101 East Post Road
White Plains, New York 10601
Telephone: (914) 422-8755
Facsimile: (914) 422-8706
Email: Judy.Prosper@ag.ny.gov
Email: Guy.Mitchell@ag.ny.gov
Email: Jane.Azia@ag.ny.gov

Attorney for Plaintiff
STATE OF NEW YORK